IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE

| | |
|---|---|
| R.J., THE STUDENT,<br>BY AND THROUGH<br>HER PARENT, A.J.,<br><br>PLAINTIFFS.<br><br>VS.<br><br>KNOX COUNTY BOARD OF EDUCATION,<br>D/B/A KNOX COUNTY SCHOOLS<br><br>DEFENDANT. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) No. _____<br>)<br>)<br>)<br>)<br>)<br>) |

# VERIFIED COMPLAINT

**COME THE PLAINTIFFS,** through counsel, submitting this Verified Complaint[1] and showing:

## I. PARTIES, JURISDICTION, AND VENUE

1. The Plaintiffs are R.J., a minor student currently in the ninth grade, who resides in Knox County with her mother, A.J.

2. Defendant, Knox County Board of Education d/b/a Knox County Schools ("KCS") is vested with management and control of the County School System. It

---

[1] The Verification by the mother, A.J. is an attachment hereto.

1

is the ultimate policy-making body with regard to policy determinations in the operation of the school system. The Defendant may be served with process through the superintendent of the Knox County Schools, 400 W. Summit Hill Drive, Knoxville, TN 37902.

3. This action arises out of the following federal statutes: The Americans with Disabilities Act of 1990 (ADA), Pub. L. No. 101-336, 104 Stat. 327 (1990), 42 U.S.C. §§ 12101, *et seq.*, amended by the Americans with Disabilities Act (ADA-AA) with an effective date of January 1, 2009; the Rehabilitation Act of 1973, § 504, as amended, 29 U.S.C.A. §§ 794 and 794a, including the conforming amendment of the ADA-AA which changes the definition of "disability" under § 504 to conform to the definition of "disability" under ADA-AA. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §1331.

4. Knox County is the beneficiary of federal funding subject to Section 504 of the Rehabilitation Act, and is therefore covered by the Rehabilitation Act of 1973.

5. Venue is appropriate in this Court under 28 U.S.C. §1391(b) as the cause of action arose in Knox County and the Defendant may be found in Knox County.

## II. SUMMARY

6. This is an educational discrimination case involving a high school student, R.J., with a mental health disability.

7. In the fall off this school-year, KCS forced R.J. to *unenroll* from the school she was attending, Bearden High School, in order to obtain mental health treatment

at a residential facility in Alabama. When R.J. completed the treatment in Alabama, Knox County refused to *re-enroll* her at Bearden High.

8. KCS insisted that her unenrollment (which it required) forfeited her right to return to Bearden High. R.J.'s mother explained that R.J. had validly transferred into Bearden High before obtaining the medical treatment and the medical treatment center did not provide her any education. Her mother explained that R.J. had attempted suicides multiple times and the consistency of her school (Bearden High) is essential for her mental health. KCS refuses to budge.

9. This lawsuit seeks relief under the ADA and Section 504. KCS excluded R.J. from the benefit of Bearden High School, into which she validly transferred, *because of* her hospitalization for her disability. *Because of* her disability, it unenrolled her and refused to re-enroll her. But for her hospitalization for her disability, she would still be at Bearden, eligible through the terminal grade. By not returning her, R.J. remains at home given the severe emotional harm caused by transitions including different schools.

### III. FACTS

#### A. R.J.'s Mental Health Disability

10. R.J. is a student with a mental health disability. Clinical diagnoses include major depressive disorder, panic disorder, post-traumatic stress disorder, and anxiety. These substantially limit R.J.'s major life activities on a daily basis: her emotional regulation, concentration, thinking, learning, social interactions, and brain

3

function. R.J. is also substantially limited in eating and digestion as she experiences a dangerous eating disorder secondary to these mental health issues.

11. Not only an "actual disability," but R.J. also has a "record of" a disability. Her substantial limitations are documented in clinical records as well as educational records held by Knox County, the latter reflecting her substantial social and emotional limitations along with need for residential treatment for both her mental health and her eating disorder.

12. As part of her disability, J.S. is frequently triggered to a panicked state by environmental and other *transitions*. This includes a change of physical environment but it also includes changes to a single space itself. For example, the act of A.J.'s mother cleaning R.J.'s room will result in fits of rage, punching, and even cutting herself (self-harm).

### B. Knox County's School-Transfer Policy

13. R.J. attended Karns Middle School where she experienced a difficult time with peer-relations and bullying. For one example, when a student said, "go kill yourself," R.J. tried to do so by cutting her wrists. On another occasion, she tried to end her life by overdosing on a medication (ending safely in the ICU).

14. Karns Middle School students feed into Hardin Valley High School.

15. Like most school districts, Knox County schools are divided into "zones," and students attend the school *zoned* for their residence. The zoned school is also

known as the "base" school. "Transfers" can be approved for various reasons, including attendance, discipline, lack of progress, safety of student, welfare of the student and programming.

16. When a transfer is granted, Knox County's policy is that it is "valid through terminal grade of the school: "K-5, 6-8, 9-12." For example, if a transfer is granted in 9th grade, it is valid throughout high school. The student is not required to reapply every year.

17. Even in cases where a student does not "maintain an appropriate academic, disciplinary and attendance record at the receiving school," parents are instructed that such students will be "directed to return to their base school … *at the end of the school year,* unless the Director of Schools determines it is in the best interest of the student and/or the school system to do otherwise." [2]

18. Instead of continuing to the feeder high school for Karns Middle School (Hardin Valley High), KCS granted R.J. a transfer to Bearden High School. She began Bearden as a ninth-grader in the fall of this school-year, 2023-2024.

**C. Residential *Treatment* for R.J.'s Mental Health and Eating Disorder**

19. In September of 2023, due to her continuing mental health issues and disordered eating, R.J. required residential treatment.

---

[2] The definition and "Student Transfer within Knox County Schools" is attached to the application for transfer.

20. A.J. gave notice to KCS and then placed her daughter at the Magnolia Creek Eating Disorder Treatment Center for Adolescent Girls and Adult Women, located in Columbiana, Alabama.

21. Magnolia Creek provides evidence-based care to adolescent girls ages 12 to 17 and adult women 18 or older with an eating disorder and secondary co-occurring mental health conditions.

**D. Knox County Forces Unenrollment Even Though Magnolia is Not a School**

22. On September 18, 2023, the Teen Program Administrator at Magnolia Creek Treatment Center contacted Knox County's School Counselor at Bearden High School about R.J., with a subject line "Education at MC," and the body stating "[p]lease let me know what we can do to help facilitate her continuing her coursework while in treatment."

23. On September 20, 2023, Knox County's 9th Grade School Counselor, Ms. Leslie Lee, advised Magnolia Creek by email:

> "Good morning! I wanted to touch base about [R.S.'s] course work. Since [R.S.] is at an out of state treatment facility, we are required to unenroll her from our school and reenroll her once she completes your program. With that being the case, we also can't provide work for her since she will not be our student during her time there."

24. Magnolia Creek responded that same day:

> "We don't have a program here at the facility for clients to be able to do schoolwork while in treatment. We always work with the home school to provide assignments."

25. Ms. Lee replied:

> "Oh, gosh. I hate you don't have a school program there. We usually help coordinate what classes to work on when an out-of-state facility has their

> own education program; along with providing options for the in-state facilities. We will work with her when she returns, and map out a plan for classes.... this has happened before and students have still graduated on time with great grades!
>
> I am sorry we can't help more, but our central office gave this instruction based on our school board policies. If you speak with her about this, please share with her that I promise we will come up with a plan and she will still be on track for graduation."

26. That same day, September 20, 2023, Ms. Lee advised R.J.'s mother, A.J., that it needed to "withdraw" R.J. because she was out of state but she could "easily" re-enroll at Bearden upon finishing her treatment. Ms. Lee's message stated:

> "I wanted to let you know that since Magnolia Creek is out of the state of Tennessee, we will need to withdraw [R.J.] from Bearden High until she finishes her treatment. Once she completes treatment, you can re-enroll her easily with our registrar, Joanne Rubash."

27. As the foregoing messages between KCS and Magnolia show, R.J. was not receiving an *education out of state*.

28. On October 6, 2023, Knox County's Special Education teacher, Dr. Rhonda Kerr, checked in with A.J., asking, "How is she doing? Is the plan still for her to return to school around the end of October?"

29. On October 16, 2023, Knox County's Social Worker at Bearden High School, Ms. Katie Allen, advised R.J.'s mother, A.J., that the withdrawal should be accomplished through a "withdrawal form" to prevent her from being considered absent:

> "I am reaching out to see if [R.J.] is still at Magnolia Creek in Alabama. If so, it is my understanding that she needs to be withdrawn from Bearden since that is not in our state. Would you be able to come in and withdraw her? Our registrar, Joanne Rubash can send you a withdrawal form by email if that is more convenient. Right now, she is being marked absent every day,

7

which we know if not accurate. It is important to get the withdrawal paperwork signed by you so that her enrollment status is accurate.

Thanks for your understanding."

### E. Knox County Refuses to Return R.J. to Bearden High

30. On October 23, 2023, A.J. advised Dr. Kerr that "[R.J.] will be home from Magnolia creek and ready to attend school again on Wednesday November 1st." A.J. asked: "[S]hould I just come in on Monday and enroll her?" Within minutes, Dr. Kerr, from Bearden High, responded:

> "Yes, you can come back in to re-enroll her. Please request that the facility send any academic records so we can update he [sic] courses.
>
> Bearden offers tutoring before and afterschool. I am happy to get some information together and send to you."

31. A.J. responded:

> "Fantastic! I am happy to have her attend before and after. Thank you for always being so supportive. She really wants to do well and I think she acts out and wants to skip school because she is overwhelmed."

32. On November 6, 2023, as R.J. planned to return, Knox County's Registrar, Ms. Joanne Rubash, advised A.J. that R.J. would *not* be allowed to register and return to Bearden High.

33. That same day, A.J. sought to clear up any confusion by alerting Dr. Kerr, Ms. Allen, and Ms. Leslie Lee, another school counselor to what she had been instructed previously and how she did not receive education while at Magnolia Creek:

> " I have several emails stating that this would be an easy process. She was hospitalized and did not transfer or receive any kind of schooling while at the eating disorder residential. [R.J.'s] father is also zoned for Bearden which qualifies her. She will be starting back on Wednesday November 8th, so we need to clear this up as soon as possible please."

34. On November 6, 2023, A.J. called Mr. Hartsell, Knox County's Director of Enrollment. She explained that R.J. was a Bearden High School student who, due to her disability, required *medical* treatment in Alabama at Magnolia Creek for a serious eating disorder. A.J. explained that transitions cause extreme distress, even suicide attempts, and that returning to Bearden after her hospital stay was essential for her mental health.

35. Mr. Hartsell responded in a manner that bewildered A.J. Mr. Hartsell said he did not care about any suicides or any treatments, but it is "my rule" that a student loses the transfer once the student goes to another school (believing Magnolia Creek was another *school*). A.J. again explained that Magnolia Creek is not a different *school*, but a *hospital*. Mr. Hartsell shot back that he did not care about A.J.'s mental health situation because this was the *rule*. A.J. was so shaken by this interaction that she left work (unheard of in her 35-year career).

36. A.J. decided upon a 48-hour cooling period and, then, on November 8, 2023, she emailed Mr. Hartsell. She reiterated that Magnolia Creek was not a different *school* but a hospital that did not have a school:

> "I have also been directed by Bearden faculty to bring this issue to you and not them.
>
> **- [R.J.] sought medical treatment not a transfer to a different school**
>
> - The eating disorder treatment center did not have a school program
>
> - At no point during this process was I made aware of any issue for re-enrollment. I was requested to withdraw and confirmed it was an easy process for her return.

> - Her father is zoned for BHS and when her brother enrolled there we just signed an addendum as parenting plan is not quite 50/50.
>
> - [R.J.] has an IEP for BHS and has been diagnosed with with [sic] emotional disregulation any change of school would be catastrophic to her mental and physical health.
>
> I ask for your speedy response in this so that we can get [R.J.] back into BHS as soon as possible."

37. That same day, November 8, 2023, Hartsell responded curtly—"What staff member(s) is sharing this misinformation?"

38. A.J. responded that the information was correct, not "misinformation."

39. A.J. was so disturbed by the November 6, 2022 phone conversation that she asked that all further communication with Hartsell with her be in writing. Hartsell refused.

40. So, on November 9, 2022, A.J. and Harsell spoke again. In this call, A.J. reiterated yet again that Magnolia Creek was a hospital, not a school. Hartsell stated he would treat it no differently than withdrawing to a different school and he would not, no matter what, permit re-enrollment. He conceded he was unaware of any such policy for this situation but stating that he makes the decisions and this is how he would handle it. When A.J. explained that a different school would be catastrophic for R.J. due to her difficulties with transitions, Hartsell again resorted to his rule-making authority and not caring about impact. He again refused to permit R.J.'s re-enrollment at Bearden.

41. A.J. memorialized the denial of re-enrollment at Bearden High School. Hartsell confirmed it in the following email of November 9, 2023:

**From:** BRIAN HARTSELL <brian.hartsell@knoxschools.org>
**Sent:** Thursday, November 9, 2023 3:32 PM
**To:** [A.J.]

**Subject:** RE: [R.J.]

Yes, you are correct after consulting with BHS the request to reinstate the transfer will not be granted.

Students that withdraw from a school that's been approved a transfer, must report to their zoned school upon their return to KCS.

Take care,

**BRIAN HARTSELL**

**Knox County Schools
Director of Enrollment
865-594-1506 - Office
865-594-1504 – Fax**

42. At this point, A.J. returned to the counselor at Bearden, Ms. Katie Allen. Ms. Allen confirmed that it was the residential treatment—(i.e. for the disability)—that had *required* the withdrawal in the first instance.

> "[R.J.] had to be withdrawn when she went to residential treatment out of state. I did not realize that she would lose her transfer when she is withdrawn from Bearden. I did not even realize that she was on a transfer."

43. By withdrawing R.J. for medical treatment and then refusing to re-enroll her at Bearden High, KCS has denied her a public benefit of the transfer until the terminal grade *because of* disability. It is also refusing to grant a reasonable accommodation to modify its policies or practices to allow R.J.'s return to Bearden High in order to avoid serious emotional harm. And as a result, R.J. remains at home without supervision or education. KCS's stance is deliberately indifferent, intentional, and an act of gross misjudgment.

# IV. CAUSES OF ACTION

44. The foregoing facts are incorporated. Plaintiffs bring the following causes of action against Knox County Schools:

## AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT

### *A. Intentional Discrimination*

45. Title II of the Americans with Disabilities Act, and its implementing regulation, mandate that no qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, such as a public school or school district, or be subjected to discrimination by any such entity. *See* 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

46. School districts are required to, among other things, afford students with disabilities an equal opportunity to participate in or benefit from any aid, benefit, or service provided to other students. 28 C.F.R. § 35.130(b)(1).

47. Similarly, under Section 504, "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. 794(a). The term "program or activity" includes "all of the operations" of a school system. 29 U.S.C. 794(b)(2)(B). Section 504, too, requires equal access and provision of reasonable accommodations. 29 U.S.C. 794(a); 28 C.F.R. §41.53.

48. Acting with intent, deliberate indifference, and/or gross misjudgment, KCS excluded R.J. from the transfer-benefit of Bearden High School *because of* her hospitalization for her disability. Because of her disability, it unenrolled her and refused to re-enroll her. This denied her a benefit of the transfer to Bearden "on the basis of" and "solely by reason of" disability. But for her hospitalization, she would still be there, eligible through the terminal grade.

*B. Denial of Reasonable Accommodation (Modification)*

49. Under the ADA, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). This requirement for reasonable modification applies equally to Section 504. See *Alexander v. Choate*, 469 U.S. 287 (1985).

50. Although intent is not required, KCS did intentionally and with gross misjudgment refuse to modify existing practices, policies or procures, or Hartsell's "own" rule, to permit R.J. to obtain mental health treatment without losing her transfer to Bearden High. Knox County unenrolled her and refused to re-enroll her even though this is no fundamental alteration to simply do so.

51. Premises considered, Plaintiff seeks declaratory relief of violation of the ADA and Section 504, injunctive relief requiring KCS to immediately return R.J.

13

Case 3:23-cv-00406-CEA-JEM    Document 1    Filed 11/13/23    Page 13 of 14    PageID #: 13

to Bearden High School, training on modification of policies under ADA and Section 504, and reasonable attorneys' fees and costs.

Respectfully submitted,

**GILBERT LAW, PLLC**

/s Justin S. Gilbert
Justin S. Gilbert (TN Bar No. 017079)
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423-756-8203
justin@schoolandworklaw.com